FILED

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2010 JUN 22  A 9: 14

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| REPUBLIC SERVICES OF VIRGINIA, LLC<br>18500 North Allied Way<br>Phoenix, AZ 85054,<br><br>Plaintiff,<br><br>v.<br><br>CONSOLIDATED GREEN SERVICES, LLC<br>4920 Elm Street, Suite 325<br>Bethesda, MD 20814<br><br>Serve: Lawrence Winkler, Registered Agent<br>11507 Skipwith Lane<br>Potomac, MD 20854<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.: 1:10CV691<br>)  (AJT / IDD)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Republic Services of Virginia, LLC ("Plaintiff" or "Republic") provides as follows for its Complaint against Defendant Consolidated Green Services, LLC ("Defendant" or "CGS").

### Nature of the Action

1. This is an action arising out of Defendant's breach of its agreement with Plaintiff pursuant to which Plaintiff would invoice Defendant for the waste removal services Plaintiff provided to its end customers under pre-existing contracts, and Defendant would pay the invoices on the customers' behalf. Defendant is currently delinquent in payment to Plaintiff of $142,363.16 for services provided and invoiced by Plaintiff in accordance with the parties' agreement. Defendant's delinquency on this amount is greater than sixty (60) days. Defendant has refused all payment requests for the delinquent amounts, thus breaching the terms of the

1

agreement between the parties. Additionally, Defendant has tortiously interfered with Plaintiffs' pre-existing relationships with its customers. Defendant has taken intentional actions to disrupt Plaintiff's provision of service to customers in order to deflect responsibility for Defendant's repeated refusals to timely pay Plaintiff under their agreement. Defendant has also removed Plaintiff's containers from the customers' sites without Plaintiff's authorization, causing Plaintiff to pay thousands of dollars to retrieve these containers from third party storage facilities.

## The Parties

2. Plaintiff Republic Services of Virginia, LLC is a Virginia limited liability company with its principal place of business in Arizona.

3. Defendant Consolidated Green Services, LLC is a Delaware limited liability company with its principal place of business in Maryland.

## Jurisdiction and Venue

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and personal jurisdiction over Defendant because Defendant has purposefully availed itself of the benefits and privileges of Virginia law by the transactions at issue in this case and by otherwise doing business in Virginia.

5. Venue is appropriate in this jurisdiction under 28 USC § 1391(a)(2) because a substantial part of the events and omissions giving rise to the claim occurred in this jurisdiction.

## Facts Common to All Causes of Action

6. Republic is a leading provider of solid waste collection, transfer and disposal services.

7. Republic and its affiliates maintain several contracts with customers in the Northern Virginia, District of Columbia, and Maryland areas for the provision of waste removal services.

8. Republic's affiliates have assigned to Republic all right, title, and interest in and to any claims related to their service agreements and relationships with the customers. (Republic and its affiliates will hereafter be referred to in this Complaint as "Republic.")

9. CGS is a sustainability consulting firm that offers many waste and energy products and services, including waste and recycling services. Upon information and belief, CGS does not provide these services directly, but enters agreements with other entities to provide these services.

10. CGS inserted itself into some of Republic's pre-existing relationships with its customers by contacting the customers directly and unilaterally offering to act as a broker with Republic to obtain a lower rate on Republic's services. CGS did so without confirming with Republic that its rates would in fact be reduced.

11. Republic's customers then contacted Republic and stated that they authorized CGS to act on their behalf as a broker and requested that invoicing be switched over to CGS so that CGS could handle the billing.

12. Subsequently, in the second quarter of 2009, Republic and CGS entered into an oral agreement by which Republic would invoice CGS for the same services Republic provided to the end customers, and CGS would pay the invoices on the customers' behalf. There was no written contract between Republic and CGS.

13. The agreement between CGS and Republic did not terminate the contracts between Republic and the end customers.

14. To this day, many, if not all, of the customers' contracts with Republic still remain in effect.

15. Republic continued to provide the same waste removal services to its customers pursuant to its contracts with the customers.

16. The contracts between Republic and its customers required the timely payment of invoices for the waste removal services provided by Republic to the customers.

17. After inserting itself as a broker between Republic and its customers, CGS unilaterally lowered the rates that it charged the customers to a rate lower than the contracted rate between Republic and the customers. CGS did this without Republic's consent.

18. After providing a lower rate to the customers, CGS then tried to pressure Republic to lower its rates by as much as 12.5%, by indicating that Republic ran the risk of incurring loss of other customers if it did not accede to the demand for a rate decrease.

19. CGS did not receive documented agreement from any person authorized to act on behalf of Republic to change price, terms or conditions that would allow CGS to short pay or delay payment.

20. Throughout the duration of the agreement, there have been issues with CGS's payment of invoices, including CGS's inability to keep up with timely payment of invoices and a disagreement between Republic and CGS as to the amounts that were 90 days past the invoice date.

21. In July 2009, Republic reminded CGS via email that the payment terms for the CGS accounts were due in full net 60 days from invoice date, meaning that CGS's regular payment on or about the 25th of each month would be for invoices dated two months prior, not withstanding any prior past due balances.

22. Although CGS agreed to these terms, from that date forward it failed to comply with those payment terms.

23. CGS continued each month to short pay and change terms, resulting in an increased accounts receivable balance that Republic had to spend numerous hours on to reconcile.

24. CGS indicated to Republic that the delay in payment was due to cash flow problems, not issues with Republic's services.

25. Republic notified CGS as early as March 2010 that it would suspend service on any accounts that had a balance ninety (90) days past the invoice date until such payments were made.

26. In a March 9, 2010 email to Jim Vedder, the CFO of CGS, Rob Kinstle, Area Controller for Republic, stated that CGS had to make immediate payment of the aging amounts, but if it believed there were discrepancies, CGS could pay what it thought was the correct amount pending final resolution.

27. In a March 30, 2010 email to Mr. Vedder from Mr. Kinstle stated that Republic would need to receive payment for the January 1, 2010 invoices by the end of the week to keep the accounts open.

28. That same day, Mr. Vedder responded via email that CGS would not be able to make two months' worth of payments by the end of the week.

29. From March through May 2010, Republic attempted to reconcile any discrepancies regarding the amounts that were 90 days past the invoice date.

30. On May 11, 2010, Mr. Kinstle forwarded a copy of Republic's reconciliation of CGS's total balance through April 2010, breaking it down into three categories: (1) amounts Republic would credit off; (2) amounts that are unpaid and owed, due immediately; and (3) amounts that need to be paid unless CGS could produce documentation that Republic's invoicing was in error, *i.e.* disputed amounts.

31. On May 13, 2010, Mr. Kinstle emailed Mr. Vedder requesting a meeting, and letting him know that he was receiving pressure to have CGS's account resolve before June 1st.

32. On May 25, 2010, CGS submitted a payment for: (1) invoices for February's services; (2) payments for amounts Republic and CGS agree are due for periods prior to February 2010; and (3) payments to keep newly added accounts at 60 days.

33. On May 28, 2010, Mr. Kinstle sent an email to Mr. Vedder on the status of the CGS accounts that stated, in part:

> I have reviewed your proposal for payment with Senior Area and Region Management - due to the fact that this payment issue has been going on for approximately 9 months we are unable to wait past next Tuesday June 1, 2010. If payment on your account is not made we will have to place all accounts managed by CGS that have outstanding balances past 60 days on stop service. Payment in full of the March invoice amount by next Tuesday will put your account back in service status.

34. On June 1, 2010, Mr. Kinstle sent another email to Mr. Vedder on payment of the March invoice that stated, in part:

> . . . payment today of March invoice total will keep your portfolio in open status. Our expectation would be that your payments on 25th of each month will continue that that these payments will keep your total portfolio net 60 days outstanding and open.
>
> The reconciling items from pre-February still need to be addressed and resolved - however we are not looking to suspend service based on these items.

35. Later that same day, Mr. Vedder proposed via email an alternative payment schedule to "catch up" on the accounts payable that were more than 90 days past invoice date. Under this alternative payment schedule, CGS would pay the invoices for March 2010 service on June 25, 2010, and would pay invoices for April and May 2010 service on July 28, 2010.

36. Mr. Vedder's June 1, 2010 email also stated that under this agreement, Republic would have to agree:

> to waive any and all claims of amounts owed by CGS to [Republic] for periods prior to March 2010 and the corresponding credits will be immediately applied to CGS' accounts. Furthermore, if the same charges continue to exist on more recent invoices, the same corresponding credits will be provided by [Republic].

37. Mr. Vedder's June 1, 2010 email also stated that under this agreement, Republic would have to agree to a Master Services Agreement with CGS. CGS had been pressuring Republic to enter into a Master Services Agreement that would lower the rates in the contracts Republic had with its customers, which Republic was under no obligation to reduce.

38. Because the response Republic received from CGS on June 1, 2010, did not indicate a willingness or ability to comply with the agreed terms and Republic did not receive payment for the outstanding March 2010 invoices on that day, Republic suspended service until CGS paid the outstanding balance due.

39. On June 2, 2010, Mr. Vedder sent an email to Mr. Kinstle terminating the relationship between CGS and Republic. This email further stated, "All Republic waste equipment must be removed from any and all of our customer's [sic] premises without delay or damage to avoid additional harm and injury to both Consolidated Green Services and to our customers."

40. The contracts between Republic and its customers specifically provided that the customer is responsible for Republic's equipment at the customer's site and that it is not to be harmed or removed without Republic's consent.

41. On June 3, 2010, Mr. Kinstle responded to Mr. Vedder via email, stating that Republic had interrupted service because CGS had failed to pay Republic for the outstanding March 2010 invoices by June 1. The email further stated that Republic would not remove its equipment until

it received payment in full. It also put CGS on notice not to interfere with Republic's customer relationships.

42. On June 10, 2010, Mr. Vedder sent an "Equipment Removal Notice" to Mr. Kinstle. This notice stated, in part:

> This is to notify you that, to minimize any further harm, beginning tomorrow June 11, 2010, CGS will begin removing all containers that remain without consent on our customers' property[.]

43. Pursuant to the agreements between Republic and the end customers, the customers have consented to having Republic's containers remain on the customers' property. The agreements between Republic and the end customers were not terminated by the agreement between Republic and CGS authorizing CGS to handle the invoicing for Republic's contracts with its customers.

44. On June 10, 2010, Republic, by counsel, sent a letter to counsel for CGS notifying CGS that Republic's contracts with its customers still remain in effect and Republic is under no obligation to remove the containers from their customers' sites, and neither the end customer nor Consolidated Green has permission to move or remove Republic's property. The letter also notified CGS that the total balance due from Consolidated Green is $591,578.08, which included $142,363.16 for the past due March invoice, for all services Republic rendered to customers for which Republic Services has not received payment.

45. The June 10, 2010 letter from Republic to counsel for CGS requested that CGS make full payment of the past due March invoice in the amount of $142,363.15 no later than close of business June 14, 2010 and to provide immediate assurance that it will fully pay the remaining balance of the final invoice in a timely manner.

46. The June 10, 2010 letter to CGS's counsel also requested that CGS confirm that it will not continue to interfere with Republic's prior existing relationships with the end customers and that it will not damage, move, or remove Republic's containers that rightfully remain on the customers' property.

47. CGS has not responded to the June 10, 2010 letter.

48. On June 15, 2010, Republic learned that CGS was beginning to remove Republic's equipment from the customers' sites.

49. On June 15, 2010, Republic, by counsel, sent a second letter to counsel for CGS, reminding CGS that Republic and its affiliates have direct service contracts with the majority of the customers at issue that specifically provide that Republic's equipment at the customers' site is not to be removed or harmed without Republic's consent. The letter reiterated that Republic did not consent to the removal of its equipment from the customers' sites.

50. The June 15, 2010 letter to CGS's counsel also requested, without consenting to removal or waiving any of its rights, that if Consolidated Green intended to remove Republic's containers from the customers' sites without Republic's consent, it deliver the containers to the Republic facility servicing the account in order to mitigate damages.

51. CGS has not responded to Republic's June 15, 2010 letter.

52. Republic has learned that CGS has removed Republic's containers from some of the customers' sites. CGS did not deliver these containers to Republic's facilities, as requested in the June 15, 2010 letter, but instead had them delivered to third party storage facilities, which resulted in Republic having to pay thousands of dollars to retrieve its containers.

9

53. Some of the Republic containers that CGS removed were from the properties of customers that had committed to remaining with Republic and terminating their relationship with CGS.

54. Some of the Republic containers that CGS removed were from the properties of Republic customers who had no relationship whatsoever with CGS, including, but not necessarily limited to, Auld Shabeen Restaurant, 3871 Chain Bridge Road, Fairfax, Virginia and Orkin Store # 4471, 12173 Balls Ford Road, Manassas, Virginia.

55. As of the date of this filing, Republic has spent at least $15,000.00 on retrieving its containers from storage after CGS improperly had the containers removed from customers' sites. This figure will rise as Republic retrieves additional containers, and does not include the cost of any damage that may have been done to the containers during removal and storage.

56. Some of Republic's customers terminated their relationship with Republic following the suspension of service, which was caused by CGS's failure to make timely payment of invoices, including the failure to pay the March 2010 invoice by June 1, 2010.

57. As of the date of this filing, CGS owes Republic $345,507.32 for unpaid invoiced amounts that are more than 60 days past due.

58. As of June 25, 2010, CGS will owe Republic $465,358.73 for all unpaid invoiced amounts that are more than 60 days past due.

59. The total amount for all services Republic rendered to its customers for which it has not received payment from CGS is $591,578.08.

## COUNT I -- Breach of Contract

60. Plaintiff Republic realleges and incorporates its allegations contained in Paragraphs 1-59 of this Complaint as if fully set forth herein.

61. Plaintiff Republic and Defendant CGS entered into an oral agreement by which Republic would invoice CGS for the services Republic provided to the end customers, and CGS would pay the invoices on the customers' behalf.

62. Pursuant to this agreement, Defendant CGS was to pay invoices in full net 60 days from the invoice date.

63. Defendant CGS currently owes Plaintiff Republic $345,507.32 for unpaid invoiced amounts that are more than 60 days past due.

64. As of June 25, 2010, Defendant CGS will owe Plaintiff Republic $465,358.73 for all unpaid invoiced amounts that are more than 60 days past due.

65. Defendant CGS breached its agreement with Plaintiff Republic by failing to pay invoices in full net 60 days from the invoice date.

66. As of the date of this filing, Plaintiff Republic has suffered damages in the amount of at least $345,507.32, plus pre and post judgment interest, as a result of Defendant CGS's breach of the contract. Damages will continue to accrue if Defendant CGS fails to pay the remaining invoices.

## COUNT II -- Quantum Meruit

67. Plaintiff Republic realleges and incorporates its allegations contained in Paragraphs 1-59 of this Complaint as if fully set forth herein.

68. Plaintiff Republic is entitled to relief under the alternative claim of quantum meruit. Pursuant to its contracts with its customers, Plaintiff Republic provided waste removal services to its customers. Defendant CGS, who acted as a broker between Plaintiff Republic and its pre-existing customers, accepted the benefit of these services in the form of payment from the end customers. Defendant CGS has failed to timely provide payment to Plaintiff Republic for the

waste removal services Plaintiff Republic provided to the end customers. Allowing Defendant CGS to retain the substantial benefit of the services provided by Plaintiff Republic, without paying Plaintiff Republic the value of those services, would be inequitable.

69. Absent payment for such services, Defendant CGS will be unjustly enriched in the amount of $591,578.08, which is the unpaid amount for the services that Republic provided to its customers.

70. Based upon the foregoing, Defendant CGS owes Plaintiff Republic $591,578.08 for services provided, plus pre and post judgment interest.

## COUNT III -- Tortious Interference

71. Plaintiff Republic realleges and incorporates its allegations contained in Paragraphs 1-59 of this Complaint as if fully set forth herein.

72. Plaintiff Republic and its affiliates maintain several contracts with customers in the Northern Virginia, District of Columbia, and Maryland areas for the provision of waste removal services.

73. Defendant CGS inserted itself into some of Plaintiff Republic's pre-existing relationships with its customers by contacting the customers and offering to act as a broker with Republic to obtain a lower rate on Republic's services.

74. Plaintiff Republic's customers then contacted Republic and stated that they authorized Defendant CGS to act on their behalf as a broker and requested that invoicing be switched over to CGS so that CGS could handle the billing.

75. Plaintiff Republic and Defendant CGS entered into an oral agreement by which Republic would invoice CGS for the services Republic provided to the end customers, and CGS would pay the invoices on the customers' behalf.

76. Defendant CGS was required to pay these invoices in full within sixty (60) days.

77. The agreement between Defendant CGS and Plaintiff Republic did not terminate the contracts between Plaintiff Republic and its affiliates and the end customers. To this day, many, if not all, of the customers' contracts with Plaintiff Republic still remain in effect. Republic continued to provide waste removal services to its customers pursuant to its contracts with the customers.

78. As a broker, Defendant CGS had knowledge of the existence of the contracts between Plaintiff Republic and the end customers.

79. Defendant CGS intentionally and improperly interfered with Plaintiff Republic's contracts with its customers when it caused the customers to be in breach of their contract by failing to make timely payments of invoices, including the failure to pay the March 2010 invoice by June 1, 2010, resulting in the suspension of service.

80. Defendant CGS intentionally and improperly interfered with Plaintiff Republic's contracts with its customers when it caused the customers to be in breach of their contract with Republic by removing Republic's containers from the customers' sites without Republic's authorization.

81. Defendant CGS intentionally and improperly interfered with Plaintiff Republic's contracts with its customers, with whom CGS had no relationship whatsoever, when it caused the customers to be in breach of their contract with Republic by removing Republic's containers from those customers' sites.

82. Defendant CGS intentionally and improperly interfered with Plaintiff Republic's contracts with its customers when it caused certain customers to terminate the relationship with Plaintiff Republic following suspension of service, which was caused by Defendant CGS's

failure to make timely payment of invoices, including the failure to pay the March 2010 invoice by June 1, 2010.

83. Defendant CGS intentionally and improperly interfered with Plaintiff Republic's contracts with its customers when CGS tried to pressure Republic to lower its rates in those contracts, which Republic was under no obligation to do, by withholding payment from Republic.

84. Plaintiff Republic has suffered damages as a result of Defendant CGS's intentional and improper interference with Plaintiff Republic's contracts with its customers. Plaintiff Republic has suffered damages in the amount of $345,507.32 in unpaid invoices that are more than 60 days past due; at least $15,000.00 arising from the improper removal and storage of Republic's containers; plus additional compensatory damages in an amount to be established at trial resulting from the loss of contracts terminated by customers as a result of Defendant CGS's actions.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)     Award Plaintiff all unpaid amounts of at least $345,507.32 due to Plaintiff under its oral contract with Defendant, plus pre and post judgment interest, in connection with Count I;

(b)     Award Plaintiff damages in an amount equal to the unpaid amounts due, totaling $591,578.08, plus pre and post judgment interest, in connection with Count II;

(c)     Award Plaintiff damages in an amount no less than $360,507.32, plus additional compensatory damages in an amount to be established at trial, plus pre and post judgment interest, in connection with Count III;

(d) Enjoin Defendant from taking any actions that harm Republic's property, harm Republic's relationships with its customers, or harm Republic's reputation; and,

(e) Award attorneys' fees, costs, and all other relief as the Court may deem just and proper in this matter.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

*Stephanie D. Wilson*
Stephanie D. Wilson, Esq.
Seth C. Berenzweig, Esq.
ALBO & OBLON, LLP
2200 Clarendon Boulevard, Suite 1201
Arlington, VA 22201
Telephone: (703) 312-0410
Facsimile: (703) 312-0415
sdw@albo-oblon.com
*Counsel for Republic Services of Virginia, LLC*

Dated: June 22, 2010