**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| **REPUBLIC SERVICES OF** | ) | |
| **VIRGINIA, LLC** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 1:10-cv-00691 (AJT/IDD)** |
| | ) | |
| **CONSOLIDATED GREEN** | ) | |
| **SERVICES, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL**
**DISMISSAL OF DEFENDANT'S COUNTERCLAIMS**

Defendant/Counter-Claimant Consolidated Green Services, LLC (CGS), by and through counsel, hereby opposes Plaintiff/Counter-Defendant Republic Services of Virginia, LLC's ("Republic") motion for partial dismissal of CGS's counterclaims, specifically Counts III, IV, and V, under Rule 12(b)(6). CGS's Counterclaim sets forth *prima facie* claims for tortious interference with a business expectancy, business conspiracy, and defamation that are wholly separate from CGS's breach of contract and tortious interference with a contract claims. The reasons supporting CGS's opposition are as follows:

**I.      STANDARD OF REVIEW**

For purposes of a motion to dismiss under Rule 12(b)(6), this Court "must accept the allegations in the complaint as true and construe those allegations and the reasonable inferences derived there from in the light most favorable to the [counter-claimant]." *Lowe v. Spears, et al.*, 258 Fed. Appx. 568, 570 (4th Cir. 2007).

> Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Facial plausibility is established once the factual content of a complaint "allows the court to *draw the reasonable inference* that the defendant is liable for the misconduct alleged."

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-56 (4th Cir. 2009)

(quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)) (citation omitted).

While legal conclusions and mere recitation of the elements of a cause of action are insufficient,

detailed factual allegations are not required. *Id. See also* FED. R. CIV. P. 8(a)(2) (requiring

claimants to set forth only "a short and plain statement of the claim showing that the pleader is

entitled to relief"). The facts pleaded should "allow a court, drawing on 'judicial experience and

common sense,' to infer 'more than the mere possibility of misconduct.'" *Nemet Chevrolet*, 591

F.3d at 256 (citation omitted). "In other words, the complaint's factual allegations must produce

*an inference of liability* strong enough to nudge the [counter-claimant]'s claims '"across the line

from conceivable to plausible."'" *Id.* (citations omitted).

## II.   ARGUMENT

A.   <u>CGS sufficiently pleaded a claim for tortious interference with a business expectancy.</u>

In Count III of its Counterclaim, CGS alleges that Republic tortiously interfered with

CGS's business expectancies. The elements of this cause of action are as follows:

> (1) the existence of a business relationship or expectancy, with a probability of
> future economic benefit to plaintiff; (2) defendant's knowledge of the relationship
> or expectancy; (3) a reasonable certainty that absent defendant's intentional
> misconduct, plaintiff would have continued in the relationship or realized the
> expectancy; and (4) damage to plaintiff.

*Commercial Bus. Sys., Inc. v. Halifax Corp., et al.*, 484 S.E.2d 892, 896 (Va. 1997). Republic

complains that CGS has failed to properly plead the first and third elements, arguing that proof

of these elements "must meet an objective test."[1]  Motion to Dismiss at 3 (quoting *Commercial*

*Bus. Sys.*, 484 S.E.2d at 301).

---

[1]  Notably, no such proof is required to survive a Rule 12(b)(6) motion, and the
Virginia Supreme Court in *Commercial Business Systems* was reviewing a lower
court's ruling on a motion to set aside a jury verdict. Rather, CGS must simply

1.     *CGS's pleadings reasonably infer the existence of a business expectancy, with a probability of future economic benefit to CGS.*

To satisfy the first element of its tortious interference with a business expectancy claim, CGS must allege a "a particular expectancy which [it] is reasonably certain will be realized." *Masco Contractor Servs. East, Inc., et al. v. Beals, et al.*, 279 F. Supp. 2d. 699, 710 (E.D. Va. 2003). Specifically, CGS has alleged that Republic "interfered with CGS's business expectancies by demanding that CGS cease and desist from communicating with prospective clients currently serviced by Republic and threatening legal action if CGS refused [to] avoid contact with Republic clients." Counterclaim at ¶ 13. In addition, CGS alleged that "Republic's refusal to service CGS clients' or remove waste[] or waste containers from CGS client properties resulted in a disruption to the clients' business *as well as to the performance of CGS's contractual obligations to its clients*." Counterclaim at ¶ 16 (emphasis added). Finally, CGS alleged that it "lost clients as a result of Republic's unlawful activity." Counterclaim at ¶ 17. Yet Republic complains that CGS's failure to specifically identify "new clients" is fatal to CGS's claim. This is the type of specificity that Rule 8 and the courts explicitly do not require. *See Nemet Chevrolet Ltd.*, 591 F.3d at 256 ("Satisfying this 'context-specific' test does not require 'detailed factual allegations.'") (quoting *Iqbal*, 129 S. Ct. at 1949-50).

The "particular expectancy" identified by CGS can be found in Paragraph 13 of its Counterclaim, namely customers that Republic claimed as clients whom Republic forbade CGS from contacting by threat of litigation. CGS's allegations describe its business and how it approaches new clients and further describe CGS's business relationship with Republic. *See* Counterclaim at ¶¶ 1-6. This along with the allegation that Republic attempted to prevent CGS

---

'state a claim to relief that is plausible on its face.'" *Nemet Chevrolet, Ltd.*, 591 F.3d at 256 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

from developing a business relationship with current or former Republic customers goes beyond

the "general expectancy to remain in business" or "legal conclusions, elements of a cause of

action, and bare assertions devoid of further factual enhancement" that this Court has rejected in

prior actions. *Masco Cont. Servs.*, 279 F.3d at 710; *Nemet Chevrolet*, 591 F.3d at 255.  CGS's

assertions are plausible because it has pleaded enough for this Court "to infer 'more than the

mere possibility of misconduct'" and "draw the reasonable inference" that CGS had a business

expectancy in the form of potential contracts with current or former Republic customers.  *Nemet*

*Chevrolet Ltd.*, 591 F.3d at 256 (quoting *Iqbal*, 129 S. Ct. at 1950).

> 2.    *CGS's pleadings sufficiently allege a reasonable certainty that absent Republic's*
>        *intentional misconduct, CGS would have realized a business expectancy.*

The third element of tortious interference with a business expectancy requires pleading "a

reasonable certainty that absent defendant's intentional misconduct, [counter-claimant] would

have continued in the relationship or realized the expectancy."  *Commercial Bus. Sys.*, 484

S.E.2d at 896.  This Court can reasonably infer from CGS's Counterlaim that it successfully

recruited Republic customers as clients in the past and reasonably expected to enter into direct

contracts with other Republic customers in the future.  *See* Counterclaim at ¶¶ 3-4 (describing

CGS's business practice of approaching potential clients with a proposed comprehensive waste

services plans and entering into contracts with them which sometimes included renegotiating

contracts with their existing haulers); Counterclaim at ¶ 5 (describing CGS's business

relationship with Republic); Counterclaim at ¶ 13, 17, 34-35 (alleging loss of goodwill and

business with prospective clients).  CGS has further alleged facts showing intentional misconduct

by Republic, primarily that Republic threatened to misuse the legal system to preclude CGS from

contacting prospective clients and competing with Republic.  Counterclaim at ¶ 13.  These

allegations go beyond a mere recital of the third element and can certainly not be construed as

legal allegations.  They are also more than a mere hope that CGS would obtain direct contracts
with Republic customers as CGS has alleged success in recruiting Republic customers in the
past.  In any event, CGS is not required to prove that it had a business expectancy at this stage of
litigation; it merely has to "'state a claim to relief that is plausible on its face.'"  *Nemet
Chevrolet*, 591 F.3d at 255.  The allegations discussed above easily satisfy that standard, and
CGS has successfully pleaded the third element of its claim of tortious interference with a
business expectancy.

      CGS has successfully alleged a claim of tortious interference with a business expectancy
by pleading facts that allow this Court to reasonably infer "'more than the mere possibility of
misconduct.'"  *Id*. at 256 (citation omitted).  It has alleged (1) a business expectancy in the form
of future contracts with Republic customers; (2) Republic's knowledge of this expectancy, which
can be inferred from CGS's past recruitment of Republic customers; (3) a reasonable certainty
that CGS would have realized that expectancy, by way of its past success with Republic
customers; and (4) monetary damages resulting from Republic's conduct, including lost income
and goodwill.  Consequently, Republic cannot succeed on its motion to dismiss Count III of
CGS's Counterclaim.

      B.  <u>CGS sufficiently pleaded a claim of statutory business conspiracy.</u>

      A complaint for statutory business conspiracy must allege that "(1) two or more persons
combined, associated, agreed, or mutually undertook together to (2) willfully and maliciously
injure another in his reputation, trade, business, or profession."  *T.G. Slater & Son, Inc. v.
Donald P. and Patricia A. Brennan LLC*, 385 F.3d 836, 845 (4th Cir. 2004).  "To recover under
this theory, a [counter-claimant] must first allege that a defendant and his co-conspirators
combined together to effect a 'preconceived plan and unity of design and purpose, for the

common design is the essence of the conspiracy.'" *First Hand Comm'ns, LLC v. Schwalbach*, No. 1:05cv1281, 2006 WL 3500901, *5 (E.D. Va. Dec 04, 2006) (*quoting Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003)).  Republic argues that Count IV should be dismissed because (1) Republic and Allied are subsidiaries of the same parent and (2) CGS failed to allege this "requisite concert of action and unity of purpose in more than mere conclusory language."  *First Hand Comm'ns*, 2006 WL 3500901 at *5 (citing *Bay Tobacco*, 261 F. Supp. 2d at 499).

In support of its business conspiracy claim, CGS alleges that Republic entered into a common design with Allied Waste Services ("Allied") and others to willfully and maliciously harm CGS's reputation, trade, and business by (1) refusing to remove trash from CGS customer sites, (2) compelling CGS customers to sign a contract directly with Republic by falsely informing them that CGS was financially unable to pay its invoices, and (3) threatening to sue any waste hauler who removed trash in Republic containers at CGS customer sites. Counterclaim at ¶¶ 37-40.  CGS further alleges that it actually suffered damages as a result of Republic and its co-conspirators' plan, including "monies to procure replacement trash removal services, including the cost of a substitute hauler, the costs associated with removing large quantities of unsafe and accumulating waste at client sites, and the costs associated with removing Republic containers from client sites."  Counterclaim at ¶ 41.  It further alleges loss of business income when clients cancelled their contracts with CGS due to its inability to perform its contractual obligations for waste removal services.  Counterclaim at ¶ 42.

> 1.   *Whether Republic and Allied are separate entities capable of conspiring with each other is an issue of fact which cannot be decided at this stage of litigation.*

The first element of statutory business conspiracy requires an allegation that "two or more persons combined, associated, agreed, or mutually undertook" some concert of action.

Republic asserts that CGS has failed to successfully allege facts satisfying this element because

"a corporation cannot conspire with its wholly owned subsidiary." *Saliba v. Exxon Corp.*, 865 F.

Supp. 306, 313 (W.D. Va. 1994) (*citing Bowman v. State Bank*, S.E.2d 797, 801 (Va. 1985); *In*

*re Ray Dobbins Lincoln-Mercury, Inc.*, 604 F. Supp. 203, 205 (W.D. Va. 1984)).  Specifically,

Republic asserts that it and Allied are subsidiaries of the same parent corporation who cannot

conspire with each other.  However, Republic does not allege who that parent corporation is or

what ownership interest it has in Republic or Allied.  In any event, whether Republic and Allied

are separate and distinct businesses capable of conspiring is an issue of fact, and this Court

cannot look beyond CGS's counterclaim in ruling on Republic's motion to dismiss. *Smith v.*

*Smith*, 589 F.3d 736, 740 (4th Cir. 2009).

   2.  *CGS pleaded its business conspiracy claim with sufficient particularity.*

  CGS's pleadings are not conclusory and go beyond the vague allegation that Republic is

attempting to sell its services to CGS clients.  *See Gov't Employees Ins. Co. v. Google, Inc.*, 330

F. Supp. 2d 700, 706 (E.D. Va. 2004) (dismissing a business conspiracy claim alleging merely

"that the defendants had agreements to sell advertising to GEICO's competitors").  Rather, the

Counterclaim identifies Republic's co-conspirators, Allied Waste Services and others; describes

in detail the common design of the conspiracy, preventing CGS from performing its specific

contractual duties; and describes the methods agreed upon by Republic and its co-conspirators,

namely refusing to haul trash from CGS customers' sites, threatening any businesses that

attempted to haul the accumulating trash, and spreading falsehoods amongst CGS's customers.

These details most certainly satisfy the requirement that "business conspiracy, like fraud, must

be pleaded with particularity."  *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700,

706 (E.D. Va. 2004).  As a result, Republic's motion to dismiss Count IV of CGS's

Counterclaim must be denied.

    C.  <u>CGS sufficiently pleaded a claim of defamation.</u>

    To state a claim for defamation, CGS must allege facts showing "1) publication 2) of an

actionable statement with 3) the requisite intent."  *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F.

Supp. 2d 610, 619 (E.D. Va. 2009) (*quoting Echtenkamp v. Loudon County Public Schs.*, 263 F.

Supp. 2d 1043, 1061 (E.D. Va. 2003)).  The actionable statement "must not only be false, but

defamatory, that is, it must 'tend[ ] so to harm the reputation of another as to lower him in the

estimation of the community or to deter third persons from associating or dealing with him.'"  *Id*.

Republic asserts that CGS failed to allege that Republic made false statements or how those false

statements triggered harm.

    CGS specifically alleged that Republic told "told CGS clients their waste removal

services were being cancelled because CGS was financially unable to pay Republic's invoices, . .

. includ[ing] Redwood Commercial, The Bainbridge Companies, The Donaldson Group, and

Lemek LLC."  Counterclaim at ¶¶ 10, 45.  CGS further alleged that "Republic's statements were

**false** and damaging to CGS's reputation and business goodwill with its customers" and that

"Republic knew that the reason CGS was not paying for certain services was because of

discrepancies in the amounts that had been billed and the discussions between Republic and CGS

over the need for a Master Service Agreement."  Counterclaim at ¶¶ 11, 46 (emphasis added).

Given the allegation that CGS receives its clients' invoices and is responsible for paying them, it

is easy to infer that Republic's false statements would harm CGS's reputation and "deter third

persons from associating or dealing with [it]." Counterclaim at ¶¶ 4, 45; *Skillstorm*, 666 F. Supp.

2d at 619.  Clearly, CGS has successfully alleged that Republic knowingly made false and

defamatory statements to CGS's customers, and those allegations go beyond the recitation of

legal conclusions or the elements of defamation.  As such, Republic's motion to dismiss Count V

of CGS's complaint.

## III.    CONCLUSION

For the reasons set forth above, Defendant Consolidate Green Services, LLC has alleged

*prima facie* claims of tortious interference with a business expectancy, statutory business

conspiracy, and defamation.  Accordingly, CGS respectfully requests that this Court deny

Plaintiff Republic Services of Virginia, LLC's partial motion to dismiss.  In the event this Court

determines that CGS has failed to allege sufficient facts to state any or all of the above claims,

CGS requests that it be permitted to amend its pleadings to more clearly delineate the causes of

action set forth in Counts III, IV, and V of its Counterclaim.


Dated:  August 20, 2010                              Respectfully submitted,


                                                     */s/ Judith L. Wheat*
                                                     Judith L. Wheat (VA Bar No. 30709)
                                                     Katherine Van Dyck (appearing *pro hac vice*)
                                                     GRIFFITH & WHEAT, PLLC
                                                     1050 17th Street, N.W., Suite 600
                                                     Washington, D.C. 20036
                                                     202-496-4963 (phone)
                                                     202-587-2980 (facsimile)

                                                     *Counsel for the Defendant and Counter-*
                                                     *Claimant Consolidated Green Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendant's Opposition to Plaintiff's

Partial Motion to Dismiss Counterclaims was filed and served via CM-ECF on the 20th day of

August, 2010 to:

> Stephanie D. Wilson, Esq.
> Albo & Oblon, LLP
> 2200 Clarendon Blvd., Suite 1201
> Arlington, VA
> *Counsel for Plaintiff/Counter-Defendant*
> *Republic Services of Virginia, LLC*

*/s/ Judith L. Wheat*
Judith L. Wheat
